TINA COURTEMANCHE                    :
                                     :
        v.                           :        C.A. No. 10-427M
                                     :
MICHAEL J. ASTRUE,                   :
Commissioner of the Social Security  :
Administration                       :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on October 14, 2010 seeking to reverse the decision of the Commissioner. On April 29, 2011, Plaintiff filed a Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 8). On June 13, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 10).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is substantial evidence in the record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and that Plaintiff's Motion

to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision (Document No. 8) be DENIED.

## I.    PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on February 29, 2008 (Tr. 105-113) alleging disability as of April 23, 2007. Plaintiff's applications were denied initially on July 10, 2008 (Tr. 69-72) and on reconsideration on December 1, 2008. (Tr. 74-79). On December 15, 2008, Plaintiff requested an administrative hearing. (Tr. 80-81). On March 11, 2010, a hearing was held before Administrative Law Judge Barry H. Best (the "ALJ") at which time Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 30-59). The ALJ issued a decision adverse to Plaintiff on May 14, 2010. (Tr. 9-24). Plaintiff's claim was selected for review by the Decision Review Board. On August 17, 2010, the Decision Review Board affirmed the decision of the ALJ. (Tr. 1-4). A timely appeal was then filed in this Court.

## II.    THE PARTIES' POSITIONS

Plaintiff argues that the ALJ erred by not explicitly considering her obesity at Step 2 and by discounting the weight given to the opinions of her treating therapist and psychiatrist. Plaintiff also argues that remand is warranted to consider new and material medical evidence from Plaintiff's treating psychiatrist.

The Commissioner disputes Plaintiff's claims and contends that the ALJ appropriately considered Plaintiff's obesity in making his RFC assessment and properly evaluated the treating medical opinions. The Commissioner also asserts that a remand to consider additional evidence is not warranted under these circumstances.

### III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Jackson, 99 F.3d at 1095.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory. See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled. However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability. 20 C.F.R. § 404.1527(e). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's RFC (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner. 20 C.F.R. § 404.1527(e). See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.     Developing the Record**

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.     Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.     The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her RFC, age, education and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(I)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.     Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1) The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2) Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3) Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4) Treatment, other than medication, for relief of pain;
>
> (5) Functional restrictions; and
>
> (6) The claimant's daily activities.

Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was thirty-six years old at the time of the ALJ's decision. (Tr. 112). Plaintiff completed high school and one year of college. (Tr. 153). She worked in the relevant past as an office clerk, customer service representative, administrative assistant, cashier, auditor, receptionist, office manager, inventory clerk and purchasing assistant. (Tr. 155). Plaintiff claims disability due primarily to mental impairments (bipolar, anxiety and PTSD) and also asserts physical impairments of asthma, sleep apnea and obesity. (Tr. 33-35, 147).

Plaintiff first sought primary care treatment from Dr. Leslie Franklin on March 30, 2007. (Tr. 317-318). Among other complaints, Plaintiff mentioned obesity and depression. (Tr. 317). Dr. Franklin assessed Plaintiff as obese, but reported a normal psychological examination with good eye contact, full affect, good spirits and appropriate behavior. (Tr. 318). Subsequent records reveal that Dr. Franklin saw Plaintiff frequently over the next year or so and primarily treated her for asthma, a recurring cough and gastro-intestinal problems. (Tr. 259-315). Plaintiff occasionally complained of psychological symptoms, such as stress, irritability, depression, anxiety, low-energy levels and tearfulness. (Tr. 259, 288, 293, 309, 312). Dr. Franklin noted that Plaintiff was being treated for her depression and anxiety at the South Shore Mental Health Center ("SSMHC"). (Tr. 289, 312). At a subsequent appointment on May 3, 2007, Dr. Franklin performed a psychological examination, assessing that Plaintiff was nervous but had good eye contact, a full affect and was not sighing or crying. (Tr. 309). However, at appointments in February and March 2008, Plaintiff reported that she needed a form filled out for her disability application, and stated that she was unable to work due to her mental conditions. (Tr. 288, 289). Following these appointments, Plaintiff did not again complain of psychological symptoms to Dr. Franklin until August 25, 2008 coincidental with a recent family crisis involving her daughter. (Tr. 259).

Plaintiff sought treatment at SSMHC with social worker Diane Houston on April 19, 2007. (Tr. 319). Plaintiff complained of mood shifts, anger, depression, irritability, difficulty functioning at home and poor memory. (Tr. 320). Plaintiff also described intrusive thoughts, "hypervigalence" about her own safety and the safety of her children, and that, when at work and out in the community, she often got feelings of stomach upset and numbness, hyperventilated, sweat and her heart raced. (Tr. 321). Ms. Houston noted that Plaintiff had a neutral attitude during interview, that

her dress was neat and appropriate, that she appeared to be tearful, worried/tense, angry, sad and had a flat affect. (Tr. 327). Ms. Houston diagnosed Plaintiff with bipolar disorder, PTSD and a panic disorder with agoraphobia, and assessed a global assessment of functioning ("GAF") score of 45 or serious symptoms. (Tr. 329). Ms. Houston also reported that Plaintiff's work history was "very poor," as Plaintiff had started working at Staples in the prior week, but found it very difficult and wanted to quit. (Tr. 323).

Plaintiff met with Ms. Houston every few weeks during the spring of 2007. At these appointments, Ms. Houston generally assessed her as pleasant and cooperative and opined that Plaintiff was maintaining in response to treatment, but often noted that Plaintiff was tearful and worried, and assessed Plaintiff's affect and mood as sad, depressed, angry and anxious. (Tr. 332, 333, 335, 336). At an appointment on May 1, 2007, Plaintiff relayed that she left her job at Staples (after two weeks), as she continued to have panic attacks and tearfulness at the job, and complained of thoughts of inadequacy. (Tr. 332). On May 25, 2007, Plaintiff reported to Ms. Houston that she was running out of medication, her anxiety was a 4/10, and her depression/anger was an 8/10. (Tr. 335). During this time, Plaintiff also met with a vocational specialist, who observed that Plaintiff presented as clear, pleasant and comfortable and reported that Plaintiff indicated she was in a "transition period" and wanted to meet with the psychiatrist before looking for a job. (Tr. 334).

SSMHC psychiatrist Dr. Anthony Thornton performed a psychiatric examination of Plaintiff on June 1, 2007. (Tr. 339). Plaintiff reported that she had a history of depression, crying spells, agitation, anxiety, increased appetite and decreased sleep, and also periods of feeling up, hypersexuality and excessive speeding. (Tr. 340). Plaintiff reported a previous suicide attempt in 1992 and subsequent hospitalization, but that she had no current suicidal or homicidal ideation. Id.

-13-

Dr. Thornton performed a psychiatric exam in which he observed that Plaintiff was pleasant, cooperative and calm, had a euthymic mood, was alert and oriented, and had intact past, remote, recent and immediate recall.  (Tr. 341).

Plaintiff continued to have frequent appointments with Ms. Houston and periodic appointments with Dr. Thornton throughout the summer and fall of 2007.  At these appointments, Ms. Houston usually assessed that Plaintiff was pleasant and cooperative, had a euthymic mood, and was progressing or maintaining with therapy, but was sometimes worried, tearful, anxious, flat or angry (Tr. 342, 343, 347, 355, 359, 361, 366, 368).  Ms. Houston assessed Plaintiff's GAF score at 45 in June 2007 and October 2007.  (Tr. 349, 363).  In the summer, Plaintiff reported that she was stressed but compliant with medications, calmer, stable and with fewer complaints, and Ms. Houston opined that Plaintiff was "progressing" and "doing good work."  (Tr. 342, 343, 355).  Similarly, at appointments with Dr. Thornton, Plaintiff reported that she was doing better, felt good and felt well mentally.  (Tr. 344, 354).  He generally observed that she was calmer and had a euthymic mood, her concentration was fair, and she was pleasant and cooperative, and assessed Plaintiff's GAF score at 50 or moderate symptoms.  (Tr. 354, 364, 371).  In the fall of 2007, Plaintiff reported some anxiety to both Dr. Thornton and Ms. Houston about returning to work, but also reported that she would like to do secretarial work but "has a hard time due to her criminal record."  (Tr. 361, 364, 371).  Plaintiff also informed a medical assistant that she was eager to begin job search activity.  (Tr. 369).  However, Plaintiff missed several appointments with Ms. Houston and Dr. Thornton in the summer and fall of 2007.  (Tr. 353, 358, 359, 365).

In appointments with Ms. Houston and Dr. Thornton or other doctors during the winter and spring of 2008, Plaintiff reported some increase in depressive and anxiety symptoms due to being sanctioned by welfare for not finding a job and family issues. (Tr. 374, 375, 380, 381, 387, 392).

At appointments, Ms. Houston assessed that Plaintiff was cooperative and pleasant, but agitated and worried, with a sad, depressed and flat mood or affect, and once noted that her concentration was off. (Tr. 380, 381, 386, 387, 392). Dr. Thornton assessed a GAF score of 50 in March 2008, June 2008 and September 2008. (Tr. 375, 385, 392). At some appointments with Ms. Houston, Plaintiff relayed thoughts of inadequacy and worthlessness, decreased interests and sleep problems. (Tr. 380, 386, 387, 391). By September 2008, Plaintiff reported doing well on her medication, and her family issues were a bit calmer. (Tr. 383).

On April 29, 2009, Plaintiff met with Dr. Vithiananthan to evaluate the possibility of undergoing gastric bypass surgery to address her morbid obesity. (Tr. 417). Dr. Vithiananthan reported that Plaintiff was 5'1" tall and 238 pounds, which established a BMI of 44, and opined that she had significant problems because of her weight. (Tr. 417). He reported that she had difficulty climbing stairs, she snored, she had been diagnosed with sleep apnea, had stress incontinence, heart palpitation, frequent indigestion, reflux and gastritis, pain in her back and knees, frequent thirstiness and dizziness and headaches. Id. Dr. Vithiananthan opined that Plaintiff's other co-morbidities all supported a surgical intervention and recommended a gastric band or bypass surgery. (Tr. 418). He advised her that some of her current conditions, such as the reflux, stress continence and back pain might improve with the surgery but may not completely disappear. Id.

On May 20, 2009, Plaintiff met with psychologist Dr. Lucy Rathier for a pre-operative behavioral psychological examination. (Tr. 395). Dr. Rathier noted that Plaintiff was casually and

neatly dressed, adequately groomed, alert and oriented, with normal eye contact, posture and motor behavior, was cooperative, had a logical and coherent thought process, and her short and long-term memory was intact. Id. Plaintiff denied the symptoms of PTSD or any mania or compulsions, but admitted to symptoms of anxiety. Id. Dr. Rathier noted that Plaintiff previously saw Ms. Houston weekly but currently saw her only every four months. (Tr. 396). Dr. Rathier spoke to Ms. Houston, who reported that Plaintiff had improved tremendously in managing anxiety and increasing her daily functioning and that Plaintiff demonstrated good follow-up on treatment recommendations. (Tr. 397). Dr. Rathier opined that Plaintiff had a GAF score of 55 and recommended that Plaintiff continue mental health treatment after her surgery. (Tr. 398). Dr. Vithiananthan performed the laproscopic band surgery in September 2009. (Tr. 421).

Plaintiff continued seeing Ms. Houston throughout 2009. At these appointments, Ms. Houston generally assessed that Plaintiff was progressing with therapy and was pleasant but also noted that she was anxious and flat. (Tr. 496, 497). At an appointment in February 2009, Plaintiff reported a recent panic attack, but also that she used her coping skills to calm herself. (Tr. 496). At a May 2009 appointment, Plaintiff reported decreased interests and obsessions, but also that she was using her coping skills in daily life and social events. (Tr. 497). However, Plaintiff either cancelled or did not show up at several appointments in September and October. (Tr. 498, 500, 501). At an appointment in November 2009, Plaintiff presented as depressed, poorly motivated, and disappointed by the results of her lap band surgery and reported thoughts of worthlessness and obsessions. (Tr. 502). Ms. Houston assessed Plaintiff as unkempt, with poor rapport, motor retardation, poor eye contact, and a sad, depressed, anxious and flat mood and effect. Id. Ms. Houston noted that Plaintiff was to see Dr. Morris for medications. Id.

Plaintiff sought treatment at the South County Hospital Emergency Room on December 9, 2009 for suicidal thoughts and depression. (Tr. 485). Plaintiff was assessed to be in moderate distress, had a depressed mood, suicidal ideation, and tearfulness, but was oriented. (Tr. 488). Plaintiff was discharged home to follow up with Ms. Houston, whom she saw two days later. (Tr. 489, 492). Plaintiff reported that she was medication-compliant but had not been well since the surgery, and had thoughts of inadequacy and worthlessness. (Tr. 504). Ms. Houston assessed Plaintiff as withdrawn, with poor rapport, motor retardation, excessive worry, and with a sad, depressed, anxious, angry, flat and labile mood. Id. She concluded that Plaintiff would now be seen on a regular basis. Id.

Plaintiff's primary-care physician, Dr. Franklin, filled out an assessment of Plaintiff on March 18, 2008. (Tr. 224-225). She reported that she had treated Plaintiff for one year, and opined that Plaintiff's bipolar disorder, PTSD, anxiety and panic attacks limited her ability to engage in work. (Tr. 224). Dr. Franklin reported that Plaintiff suffered from severe symptoms of anxiety, headaches, nausea and panic attacks. Id. Dr. Franklin also opined that Plaintiff had a mild restriction in the activities of daily living and in social functioning; a mild/moderate impairment in her ability to relate to other people; and a severe limitation in understanding, carrying out and remembering instructions, paying attention and concentrating in a work setting, responding appropriately to supervision or to coworkers, responding to customary work pressures, and performing tasks. (Tr. 226-227). She opined that Plaintiff could not sustain full-time employment as Plaintiff had a poor response to psych-mood medications, severe disabling anxiety, could not tolerate the workplace and generally has a poor prognosis. (Tr. 225, 228).

On June 16, 2008, treating psychiatrist Dr. Thornton assessed Plaintiff's emotional impairments. (Tr. 229). Dr. Thornton noted that he had only treated Plaintiff for two weeks in June 2007. Id. He noted that she presented with depression, poor focus and concentration, irritability, lethargy, tearfulness, panic attacks and agoraphobia. Id. Dr. Thornton opined that Plaintiff could not sustain competitive employment, as past attempts at employment had triggered increases in panic, irritability, tearfulness and passing suicidal ideation. (Tr. 230). Dr. Thornton also concluded that Plaintiff continued to have organization deficits and a decrease in the ability to focus. Id. He opined that Plaintiff had a moderate impairment in her ability to relate to other people; a moderately-severe restriction in the activities of daily living, social functioning, her ability to understand, carry out and remember instructions, and her ability to perform simple and repetitive tasks; and severe limitations in her ability to pay attention and concentrate, respond appropriately to supervision, respond appropriately to coworkers, respond to customary work pressures and perform complex and varied tasks. (Tr. 231).

On June 17, 2008, a state agency reviewing psychologist, Dr. Clifford Gordon, assessed Plaintiff's mental impairments and mental RFC. Dr. Gordon opined that Plaintiff suffered from the severe impairments of an affective disorder, specifically bipolar disorder, and anxiety related disorder consisting of panic attacks and PTSD. (Tr. 237, 240, 242). He opined that these impairments caused Plaintiff a moderate restriction in the activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and one or two decompensations. (Tr. 247). In assessing Plaintiff's mental RFC, Dr. Gordon found that Plaintiff could understand, remember and attend to basic tasks with 1-2-3 consistent steps; could complete tasks in two-hour blocks of time; could relate adequately to

coworkers and supervisors over time, but could not relate consistently to the public; would do best with object-focused tasks; and could adopt to ordinary changes in the workplace. (Tr. 235). On November 26, 2008, another state agency reviewing psychologist, Dr. J. Stephen Clifford, affirmed the June 17, 2008 mental assessment of Dr. Gordon as written. (Tr. 394).

On June 24, 2008, Dr. John Bernardo, a state agency reviewing physician, assessed Plaintiff's physical RFC. He opined that she could occasionally lift twenty pounds; could frequently lift ten pounds; could sit for about six hours in an eight-hour day; could stand or walk about six hours in an eight-hour workday; could frequently balance, stoop or kneel; and could occasionally climb ramps and stairs, crouch or crawl; but could never balance. (Tr. 252-253). He also opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases and hazards due to her asthma. (Tr. 255). Although he focused on Plaintiff's mental impairments and asthma, he also considered her obesity as an impairment. (Tr. 251). On November 24, 2008, another state agency reviewing physician, Dr. Joseph Callaghan, affirmed the June 24, 2008 RFC assessment of Dr. Bernardo as written. (Tr. 393).

Ms. Houston filled out an emotional impairment questionnaire on December 28, 2009. (Tr. 510). She reported that Plaintiff was diagnosed with a bipolar disorder, and had a history of severe anxiety, panic attacks and PTSD and a current GAF score of 45. (Tr. 507). She opined that Plaintiff could not work full-time, as Plaintiff had not reached a stability level to have daily sustained energy, focus and mood stability to work. (Tr. 508). Ms. Houston opined that Plaintiff had a severe restriction in social functioning, in her ability to perform complex or varied tasks, and in her ability to respond appropriately to supervision or coworkers; a moderately-severe impairment in her activities of daily living, her ability to relate to other people, her ability to pay attention and

concentrate in the work place, her ability to respond to customary work pressures, and her ability to perform repetitive tasks; and a moderate impairment in her ability to understand, carry out and remember instructions and perform simple tasks. (Tr. 509-510).

On February 16, 2010, Plaintiff underwent an evaluation by psychologist Dr. Louis Turchetta. (Tr. 511). Dr. Turchetta noted that Plaintiff was adequately groomed but somewhat disheveled, her work tempo was slow and tedious but within normal limits, her task persistence was adequate and she became frustrated and anxious at times. (Tr. 511). He also opined that she was friendly, cooperative, motivated, with adequate eye contact and fair attention and concentration, but had a flat and blunted affective display, and that she presented as sad and depressed. (Tr. 512). Dr. Turchetta diagnosed Plaintiff with bipolar disorder, PTSD, panic disorder with agoraphobia and alcohol abuse in remission. (Tr. 516). He assessed her GAF at 45, and opined that she was disabled from an emotional perspective, as she would struggle with social interactions as well as coping effectively with normal work pressures. (Tr. 516-517). Dr. Turchetta opined that Plaintiff's impairments met Listings 12.04 and 12.06, as she had marked to extreme restrictions in the activities of daily living; marked difficulties in maintaining social functioning; marked to extreme difficulties in maintaining concentration, persistence or pace; and one or two episodes of decompensation. (Tr. 520). More specifically, he concluded that Plaintiff had a severe impairment in her ability to relate to other people, in social functioning, in responding appropriately to supervision or coworkers, and in performing varied tasks; a moderately-severe to severe impairment in her activities of daily living, her attention and concentration, and her ability to perform repetitive tasks; a moderate to moderately-severe impairment in her ability to understand, carry out, and remember instructions; and a moderate impairment in her ability to perform simple tasks. (Tr. 518-519).

Dr. Andrew Morris, a treating psychiatrist, filled out a psychological questionnaire of Plaintiff on February 24, 2010, which Ms. Houston co-signed. (Tr. 536). He reported that he had treated Plaintiff although he did not specify when his treatment of Plaintiff began, and instead referred to Plaintiff's general treatment at SSMHC. (Tr. 533). Dr. Morris noted that Plaintiff's symptoms were severe, and opined that she could not maintain a full-time job, as she could not maintain consistent mood, energy and concentration to work. (Tr. 534). He also opined that Plaintiff had a severe restriction in social functioning, in her ability to respond appropriately to supervision and customary work pressures, and in her ability to perform tasks; and a moderately severe impairment in her ability to relate to other people, in her activities of daily living, in her ability to understand, carry out and remember directions, her attention and concentration, and her ability to respond appropriately to coworkers. (Tr. 535-536).

On March 15, 2010, Ms. Houston wrote a letter to Plaintiff's attorney, stating that Plaintiff has been compliant with treatment, which had prevented a second hospitalization. (Tr. 538). Ms. Houston explained that many of Plaintiff's no-shows at appointments were same-day cancellations due to sickness, which could only be recorded in the agency computer as "failed to keep." Id. She opined that Plaintiff's symptoms made predictable long-sustained energy and focus impossible, and impacted her activities of daily living, interpersonal relationships and any employment. Id.

**A.    The ALJ's Decision**

The ALJ decided this case adverse to Plaintiff at Step 5. (Tr. 23-24). At Step 2, the ALJ determined that Plaintiff's PTSD, bipolar disorder, anxiety disorder, asthma and obstructive sleep apnea, were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 15). However, at Step 3, the ALJ concluded that these impairments, either singly or in

combination, did not meet or medically equal any Listing.  Id.  As to RFC, the ALJ found that Plaintiff was able to perform a limited range of light work subject to certain non-exertional limitations primarily arising from Plaintiff's asthma and mental impairments.  (Tr. 16).  Based on this RFC and testimony from the VE, the ALJ concluded at Step 5 that Plaintiff was not disabled because she was capable of making a successful adjustment to unskilled light jobs existing in significant numbers in the economy.  (Tr. 23-24).

**B.     Plaintiff Has Not Shown Grounds for a Sentence Six Remand**

Plaintiff argues that this case should be remanded under sentence six of 42 U.S.C. § 405(g) to allow the ALJ to consider additional medical records from Plaintiff's treating psychiatrist, Dr. Morris.  These consist of treatment notes and medication records for the period January 21, 2010 to January 8, 2011.  (Document No. 8-1).  Since the ALJ rendered his decision in this case on May 14, 2010, some of this evidence predates and some postdates the administrative decision under review.

In order to obtain a remand under sentence six, Plaintiff must show that "there is new evidence which is material" and that "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  Evidence is generally considered "new" if it was "not in existence or available to the claimant at the time of the administrative proceeding." Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990); see also Evangelista v. Sec'y of HHS, 826 F.2d 136 (1st Cir. 1987).  The "good cause" element of sentence six only comes into play when a claimant presents evidence not in existence or available to him at the time of the ALJ hearing that might have changed the outcome.   Seavey v. Barnhart, 296 F.3d 1, 3 (1st Cir. 2001).  The First Circuit has instructed that "Congress plainly intended that [sentence six] remands for good cause should be few

and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security appeals." Evangelista, 826 F.2d at 141. Thus, the claimant bears the burden of establishing "a legally adequate reason" for failing to present evidence to the ALJ. Lisi v. Apfel, 111 F. Supp. 2d 103, 107 (D.R.I. 2000).

Here, the absence of all of Dr. Morris' treatment notes from the record was not a surprise to the ALJ or Plaintiff's counsel. In fact, it was the ALJ who raised the issue and gave Plaintiff's counsel a fair opportunity to submit the records prior to issuing his decision. The following portion of the transcript is telling:

Atty:   I have nothing further.

ALJ:   All right. <u>Is the medical record complete</u>?

Atty:   <u>Yes</u>.

ALJ:   <u>Are you sure</u>? The reason I ask is that she's indicated that she sees somebody at South Shore every two weeks. She sees her doctor every couple three months. The last record we have is December.

Atty:   <u>I'll be more than happy to make another contact and get what's in for the last couple of months</u>.

EXAMINATION OF CLAIMANT BY ADMINISTRATIVE LAW JUDGE:

Q   Anything change very much in the last couple of months at South Shore or is it pretty much the same or do you feel like, have your sessions been any different?

A   The sessions are pretty much the same when I can get to them.

ALJ:   <u>I leave it up to you whether you want to submit those or not. I'll consider what I have before me when I review the case and decide.</u> Thank you. The hearing can be closed at 2:00.

(Tr. 57-58). (emphasis added).

Plaintiff's counsel never submitted the "missing" records in the two-month period between the ALJ hearing and the issuance of the ALJ's decision, and presently offers no explanation as to why he did not do so. See Conte v. McMahon, 472 F. Supp. 2d 39, 45 (D. Mass. 2007) (Claimant "had legal representation, which places less of a burden on the [ALJ] independently to develop the record."). Because Plaintiff's experienced social security attorney did not obtain and submit the "missing" records to the ALJ and Plaintiff testified that the treatment sessions in question were "pretty much the same" (Tr. 58), it is reasonable to conclude that the records would not be material, i.e., change the outcome of the administrative decision.

Here, even if Plaintiff could show that the new evidence was "material," she has not shown "good cause" for failing to present the evidence to the ALJ prior to his administrative decision. Plaintiff simply argues that good cause is present because the records either did not exist or were unavailable at the time of the ALJ hearing. (Document No. 8 at pp. 12-13). However, "[t]he mere fact that the date on the report postdates the agency proceedings does not establish good cause." Budzko v. Social Security Admin. Comm'r, 229 F.3d 1133, 2000 WL 979973 at *1 (1st Cir. June 26, 2000) (per curiam); see also Lyons v. Barnhart, No. 03-47-B-W, 2004 WL 202837 at *4 (D. Me. Jan. 30, 2004) (bald argument that records did exist does not suffice as good cause or, if so, all proffered post-decision evidence would result in remand). In addition, as to the pre-decision evidence, Plaintiff has offered absolutely no explanation for the failure to submit the records to the ALJ. In fact, as discussed above, it was the ALJ who pointed out the absence of such records and Plaintiff's attorney who failed to submit them as promised. (Tr. 58). Plaintiff has not met her burden of establishing grounds for a sentence six remand.

**C.**     **The ALJ's Failure to Expressly Consider Plaintiff's Obesity at Step 2 Does Not Warrant Remand**

While the Commissioner concedes that the ALJ may have erred in not finding Plaintiff's obesity to be a severe impairment at Step 2, he argues that any such error is harmless and does not warrant remand.  (Document No. 10 at p. 17); see Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) (finding Step 2 error harmless when ALJ proceeds to later steps of the sequential evaluation process); and Portorreal v. Astrue, No. 07-296-ML, 2008 WL 4681636 at *4 (D.R.I. Oct. 21, 2008) (finding Step 2 error harmless when ALJ considered non-severe impairment in assessing RFC).  The Court agrees.

Although Plaintiff's attorney referenced obesity in his opening statement to the ALJ, he argued that Plaintiff suffered "primarily" from non-exertional impairments related to her psychiatric conditions.  (Tr. 33-34).  He also noted Plaintiff's anxiety resulted in overeating which contributed to the obesity and that her sleep apnea was exacerbated by the obesity.[1]

Plaintiff testified that she failed at her last two jobs due to anxiety issues (Tr. 37-38, 40, 147) and did not testify as to any limitations specifically related to her obesity.  In her brief, Plaintiff does not identify any particular additional functional limitations arising from her obesity which would alter the ALJ's RFC assessment.  Senay v. Astrue, No. 06-548S, 2009 WL 229953 at **12-13 (D.R.I. Jan. 30, 2009) (rejecting claim that obesity was not adequately considered in RFC assessment where Plaintiff "failed to support her argument with specific references to limitations resulting from [her] obesity").  Plaintiff also inaccurately argues that "other than referencing the fact that [she] underwent lap band surgery in a failed attempt to combat her severe obesity, the ALJ fails

_____

[1]  At Step 2, the ALJ determined that Plaintiff's anxiety disorder and obstructive sleep apnea were severe impairments.  (Tr. 15).

to mention obesity at all." (Document No. 8 at p. 7). This is not an accurate representation of the ALJ's decision. In fact, in discussing his RFC conclusion that Plaintiff was capable of performing a limited range of light work, the ALJ specifically notes Plaintiff's obesity diagnosis, her binge eating, her intention to exercise to maximize weight loss, as well as "the failure to lose weight after her lap-band surgery." (Tr. 18-20). The record reflects that the ALJ was aware of Plaintiff's obesity and appropriately considered it in assessing Plaintiff's RFC.[2] Thus, even if the ALJ erred at Step 2 by not finding Plaintiff's obesity to be a severe impairment, such error is harmless based on this record and absent any specific showing by Plaintiff of any particular functional limitations attributable to her obesity that the ALJ failed to consider in making his RFC finding.

### D. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Psychiatrist and Therapist

Plaintiff contends that the ALJ erred in his evaluation of the opinions of her treating therapist, Ms. Houston, and her treating psychiatrist, Dr. Morris. The ALJ discussed their assessments in detail and found that they were unworthy of "any significant probative value." (Tr. 21). The ALJ concluded that their opinions of moderately severe to severe functional limitations related to Plaintiff's mental impairments were not supported by the record. Id.

In his RFC assessment, the ALJ concluded that Plaintiff was subject to moderate limitations in her ability to maintain attention and concentration and her ability to deal appropriately with coworkers and supervisors. (Tr. 16). This assessment is supported by competent medical evidence of record. In particular, it is consistent with the conclusions reached by Dr. Gordon, a reviewing psychologist, (Exs. 5F and 6F), and Dr. Rathier, an independent psychologist (Ex. 12F). Dr. Gordon

---

[2] It is apparent that the ALJ based his physical RFC conclusion on the opinion of Dr. Barnardo who expressly considered Plaintiff's obesity. (Tr. 251).

assessed only moderate functional limitations based on his review of the medical records. (Tr. 233-235, 247). Dr. Rathier indicated that Plaintiff denied symptoms of PTSD, obsessions, compulsions, mania or dissociation, reported that her capacity to concentrate and her memory were good (although she was occasionally forgetful) and described her interactions with others as good (although she disliked crowds). (Tr. 395). Plaintiff told Dr. Rathier that she did not perceive that her physical or emotional health interfered with her social activities. (Tr. 396). Dr. Rathier found that Plaintiff was able and "reasonably motivated" to make lifestyle changes to support weight loss and maintenance following gastric bypass surgery. (Tr. 398). She assessed a GAF rating of 55 reflecting moderate symptoms. Id. Finally, Dr. Rathier noted that Ms. Houston reported to her that Plaintiff had "improved tremendously in managing anxiety and increasing her daily functioning." (Tr. 397).

In the end, the ALJ rejected the "check-off forms prepared in connection with the...disability hearing" and based his RFC determination on "the objective medical findings in the contemporaneously recorded treatment notes; the assessment of the impartial psychological examiner [, Dr. Rathier,] the lack of regular or intensive treatment sought or required by [Plaintiff], the failure of [Plaintiff] to comply with regular treatment; and the testimony at the hearing." (Tr. 22). "The ALJ's resolution of evidentiary conflicts must be upheld if supported by substantial evidence, even if contrary results might have been tenable also." Benetti v. Barnhart, 193 Fed. Appx. 6, 2006 WL 2555972 (1st Cir. Sept. 6, 2006) (per curiam) (citing Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1 (1st Cir. 1987)). In other words, the issue presented is not whether this Court would have found Plaintiff's impairments to be disabling but whether the record contains sufficient support for the ALJ's RFC assessment and non-disability finding. Plaintiff has shown no error in the ALJ's evaluation of the medical evidence. The ALJ's decision reflects that he appropriately

weighed the entirety of the evidence and had a sufficient basis in the record for his conclusions. Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of the record. See Rivera-Torres v. Sec'y of HHS, 837 F.2d 4, 5 (1st Cir. 1988) (the resolution of evidentiary conflicts is within the province of the ALJ).

As to Ms. Houston, she is a licensed social worker and thus she is not an "acceptable medical source" under 20 C.F.R. § 404.1513(a). Accordingly, although her opinions must be considered, her opinions are not presumptively entitled to controlling weight under the "treating physician rule." See 20 C.F.R. § 404.1527(d). On December 28, 2009, Ms. Houston completed questionnaires in anticipation of the disability hearing in which she opined that Plaintiff was unable to work and that her mental functioning was moderately severely to severely impaired in most categories. (Tr. 507-510). However, as accurately noted by the ALJ, Ms. Houston gave a positive report of Plaintiff's status to Dr. Rathier on May 28, 2009 and indicated that Plaintiff had "improved tremendously in managing anxiety and increasing her daily functioning." (Tr. 397). In addition, as accurately noted by the ALJ, Plaintiff missed several appointments with Ms. Houston and Dr. Morris since May 2009, and Ms. Houston only saw Plaintiff twice between her positive report to Dr. Rathier and her opinions assessing significant limitations in the late 2009 questionnaires. (Tr. 498-506). The ALJ cannot be faulted on this record for considering these and other circumstances in assessing the weight to be given to Ms. Houston's opinions. The ALJ fully explained his reasons for giving minimal weight to Ms. Houston's opinions and, since such reasons are supported by the record, they are entitled to deference.

Dr. Morris is a treating psychiatrist and thus his opinions are subject to the "treating physician rule." Because a treating physician is typically able to provide a detailed longitudinal

picture of a patient's impairments, an opinion from a treating source is generally entitled to considerable weight if it is well supported by clinical findings and not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d); <u>see also</u> <u>Castro v. Barnhart</u>, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors."). The amount of weight to which a treating source opinion is entitled depends in part on the length of the treating relationship, the frequency of the examinations, consistency with the record and record support. 20 C.F.R. § 404.1527(d)(2)-(3). If a treating source's opinion is not given controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons" provided by the ALJ for the level of weight given. 20 C.F.R. § 404.1527(d)(2). <u>See</u> <u>Soto-Cedeño v. Astrue</u>, 380 Fed. Appx. 1, 2010 WL 2573086 at **2-3 (1st Cir. 2010) (per curiam) (finding that the ALJ must give "supportable reasons" for rejecting a treating physician opinion).

Here, the ALJ concluded that he was unable to accord any significant probative value to Dr. Morris' opinions because "there is no evidence submitted to reflect that Dr. Morris actually treated and assessed" Plaintiff. (Tr. 21). In the questionnaire dated February 24, 2010 and signed by both Dr. Morris and Ms. Houston,[3] it indicates that Plaintiff has been treated by a doctor and therapist since 2007 but it does not identify which doctor. (Tr. 533). Plaintiff initially treated with Dr. Thornton at SSMHC during 2007 and 2008, and the record contains no records reflecting that Plaintiff actually saw Dr. Morris at SSMHC. (Tr. 319-392, 496-506). In addition, on November 5, 2009, Ms. Houston recorded that Plaintiff had missed three appointments with the doctor and had

---

[3] Although Dr. Morris signed the questionnaires, the handwriting for the actual responses reasonably appears to be that of Ms. Houston. <u>Compare</u> Tr. 533-534 <u>with</u> Tr. 507-508.

not had meds, "per chart," since September 7, 2009. (Tr. 501). Based on the record before him, it was not unreasonable for the ALJ to give little weight to Dr. Morris' "treating psychiatrist" opinions since there was no evidence in the record showing that he had actually treated Plaintiff.[4]

Although Plaintiff disagrees with the ALJ's ultimate conclusions, she has not shown any error in the ALJ's evaluation of medical evidence. See Rivera-Torres, 837 F.2d at 5 (the resolution of evidentiary conflicts is within the province of the ALJ). Accordingly, Plaintiff has not established grounds for a sentence four remand.

### IV.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 10) be GRANTED and Plaintiff's Motion to Reverse Without or, Alternatively, With a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 8) be DENIED. I further recommend that final judgment enter in favor of Defendant affirming the Commissioner's decision.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

---

[4] Although Plaintiff testified on March 11, 2010 that her psychiatrist was "now" Dr. Morris, she did not indicate when she started seeing him and testified that she only saw him "once every other month for med management to just make sure my meds are working." (Tr. 41). In addition, as noted in Section B, the ALJ alerted Plaintiff's attorney to the lack of records for these claimed appointments with Dr. Morris, and he never followed through and submitted the records as he promised. (Tr. 58).

_/s/ Lincoln D. Almond_
LINCOLN D. ALMOND
United States Magistrate Judge
July 14, 2011